OPINION
Plaintiff-appellant Melanie Grillis appeals from an order of the trial court modifying provisions in a divorce decree pertaining to the transportation of the minor children of the parties for visitation purposes. She contends that there was no evidence to support the trial court's finding of a change in circumstances, and also that the trial court abused its discretion by requiring her to provide transportation. We conclude that there is evidence in the record from which the trial court could properly find a change of circumstances, justifying a modification of the order, and that the modified order does not constitute an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.
 I
The parties were divorced by a judgment and decree of divorce entered April 15, 1998, in Clark County. That decree incorporated by reference a separation agreement between the parties which, in turn, adopted a joint plan for shared parenting that was filed with the trial court. Pursuant to the joint plan of shared parenting, during the school year the children were to live with Burnett during most of the week, while Grillis was to enjoy visitation "on alternating weekends commencing after school (2:30 p.m. 3:00 p.m.) on Friday and terminating at 2:30 p.m. on Sunday. Additionally, she shall have one week-night of visitation commencing at 4:00 p.m. and terminating at 7:00 p.m. to accommodate the childrens' bedtime schedule." The issue of transportation of the children was dealt with in a separate paragraph of the joint plan for shared parenting, as follows:
 "H. TRANSPORTATION: While both parties remain in the vicinity of Springfield, Ohio, the visiting parent shall pick up the children at the commencement of companionship and the other party shall retrieve the children at the termination of said companionship period. In the event one party moves from the vicinity of Springfield, Ohio, the parties agree to exchange the children for companionship purposes at a determined halfway point for pickup and return of the children. Further, the parties agree to exchange the camcorder at the same time the children are exchanged for companionship purposes in order for each parent to have the opportunity to tape record the children and their activities."
In November, 1998, Grillis moved to Medina, Ohio, a distance of some 156 miles from Springfield. It appears that the provision for transporting the children by meeting halfway between Springfield and Medina was followed occasionally, but haphazardly. In any event, on February 20, 2001, Burnett filed a motion for modification of the joint parenting arrangement. There were three branches to Burnett's motion. Burnett moved for an order requiring Grillis to provide the entire transportation to and from her scheduled visitations, Burnett moved that he be allowed the tax exemptions for both children, and Burnett moved for an order requiring Grillis to pay child support. The joint plan of shared parenting had expressly provided for no order of child support.
Following a hearing, the second and third branches of Burnett's motion were denied, but the first branch of his motion was granted. Grillis was ordered to transport the children to and from Springfield for her visitations. From this order, Grillis appeals.
 II
Grillis's First Assignment of Error is as follows:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLANT'S RELOCATION TO MEDINA FROM SPRINGFIELD WAS A SUFFICENT CHANGE IN CIRCUMSTANCES TO SUPPORT MODIFICATION OF THE SHARED PARENTING PLAN WHEN SUCH A MOVE WAS CONTEMPLATED BY THE PARTIES IN THE ORIGINAL PLAN."
At the hearing, Burnett, a Springfield police officer, testified that as a result of a change of supervisor, he lost flexibility with respect to his working hours:
 "Q. Officer, has there been a change in supervision since 1998?
"A. I've changed supervisors twice.
 "Q. Okay. Has there been a change in the way your supervisors has [sic] enforced work hours?
"A. Yes.
"Q. And what is that change?
 "A. I had a supervisor early at the beginning of these proceedings that allowed me to come in late and just go ahead and work eight hours which led me to 12 sometimes 16 when I was late they allowed me to stay to make up the time. They didn't take the time away from me. He was very lenient that way.
"Q. What is his name?
"A. He has since retired. His name is Wayne Ayres.
"Q. And your present supervisor is who?
 "A. We got a new supervisor, Lieutenant Cyzak a newly promoted lieutenant who was very strict on the hours.
 "Q. Under the supervision of Lieutenant Cyzak, if you were to drive your children halfway and be gone for three hours or so to drop the children off every other weekend, what would happen, will happen for your employment?
 "MR. KIRKLAND [representing Grillis]: We'll object. You can't ask him to talk for somebody else.
 "THE COURT: Well, I'll I'll overrule the objection with the exception you can't speak for what your supervisor says, you can give an opinion as to what you think will happen.
"A. I can speak for policy.
"THE COURT: That's fine.
 "THE WITNESS: The first time, according to policy, that you are late is an oral reprimand and the second time is a written reprimand, and the third time is a suspension, and the fourth time you are fired.
 "Q. Has their policy been enforced by Lieutenant Cyzak since his supervision began?
"A. Yes.
 "Q. And was it enforced by Officer Ayers [sic] or Lieutenant Ayers [sic]?
"A. He enforced it. He was much more lenient with it."
By contrast, Grillis testified that her working hours were very flexible, permitting her to spend time with the children.
In our view, Burnett's testimony, if believed, established a change in circumstances justifying a modification of the requirement that he meet Grillis halfway in the transportation of the children to and from visitation. Grillis contends that Burnett's testimony is not worthy of belief, but we find nothing in the record to support this assertion.
Grillis's First Assignment of Error is overruled.
 III
Grillis's Second Assignment of Error is as follows:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN MODIFYING THE SHARED PARENTING PLAN BY REALLOCATING TRANSPORTATION RESPONSIBILITIES IN THAT THE DECISION WAS BASED ON INSUFFICIENT AND INCOMPETENT EVIDENCE."
Grillis's argument that the decision to modify the shared parenting plan was based on insufficient and incompetent evidence appears to be based upon her contention that the trial court should not have credited Burnett's testimony concerning the loss of flexibility in his working hours. As noted in Part II, above, we find nothing in the record that would require the trial court to disbelieve Burnett's testimony in this regard.
Much of Grillis's argument that the trial court abused its discretion when it modified the transportation arrangements is contained in the first part of her brief, dealing with her First Assignment of Error. She cites Rayner v. Rayner (June 29, 1994), Montgomery App. No. 14011, andLippencott v. Lippencott (Nov. 17, 1993), Champaign App. No. 93-CA-16, for the proposition that: "transportation is an economic issue rather than a visitation issue, and is therefore governed by the statutes dealing with child support instead of those dealing with visitation." We have no quarrel with this as a general proposition, but the transportation arrangements contained in the joint plan of shared parenting that was incorporated in the original judgment and decree of divorce in this case, has both economic and non-economic aspects. That provision required the parties to meet each other halfway in transporting the children for visitation purposes in the event one of the parties was to move away from the vicinity of Springfield. Implicit in that arrangement is that each party is responsible for the expense of transporting the children to and from the halfway point. In addition to the economic aspect of this arrangement, there is the practical necessity for each party to transport the children. As a result of Burnett's loss of flexibility in his working hours, he can no longer drive the children to and from the halfway point. This requires modification of the transportation arrangements. Because Grillis testified that she enjoys flexibility in her working hours, we see no inequity, or abuse of discretion, in the modification requiring her to transport the children for visitation.
The issue remains whether it is equitable to require Grillis to bear the entire expense of that transportation. The trial court noted that, since her move, Grillis has remarried, and, according to both her testimony and a joint tax return admitted in evidence at the hearing, she and her current spouse have gross combined earnings of $192,000 per year, "all of which enables her the luxury of not working full time and enjoying the flexible work hours which she presently does." The trial court also noted that if Grillis were required to pay child support pursuant to the statutory guidelines, her annual obligation would be $1,247. The trial court found "that it is both fair and equitable to require Ms. Grillis to pay all transportation expenses to facilitate her visitations herein and * * * that it is both fair and equitable and in the children's best interests that she not be obligated to pay child support to Mr. Burnett at this point in time." Accordingly, the trial court denied Burnett's motion for an order requiring Grillis to pay child support, but granted his motion to require Grillis to transport the children for visitation purposes. We find nothing inequitable in that decision.
Grillis's Second Assignment of Error is overruled.
 IV
Both of Grillis's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.